**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: MICHAEL G. MINOR,** | : | |
| | : | |
| **THE CITY OF PHILADELPHIA et al.,** | : | **CIVIL ACTION NO. 15-3562** |
| **Appellants,** | : | |
| | : | |
| **v.** | : | **BANKRUPTCY NO. 13-19278** |
| | : | |
| **MICHAEL G. MINOR,** | : | |
| **Appellee.** | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                              **March 30, 2016**

Debtor Michael Minor filed a Chapter 13 bankruptcy petition in the United States

Bankruptcy Court for the Eastern District of Pennsylvania. The City of Philadelphia and Good

Bet Trading, LLC jointly appeal the Bankruptcy Court's Order confirming Debtor's Third

Amended Chapter 13 Plan. After considering the briefs and the record on appeal, the Court will

affirm the Bankruptcy Court's order for the following reasons.

## I.      FACTUAL AND PROCEDURAL HISTORY

Debtor is an elderly veteran who, along with his siblings, inherited his mother's home

when she passed away in 2005. Debtor and his siblings fell behind on their real estate taxes and

in January 2012, the City filed a petition in state court under the Municipal Claims and Tax Lien

Act (the MCTLA),[1] seeking to hold a sheriff's sale of Debtor's home (the Property) to collect the

unpaid real estate taxes.  Under § 7283 of the MCTLA, a city that is owed real estate taxes may

petition the court to grant a rule to show cause "why a decree should not be made that the

property be sold," and after proper service to parties in interest and a hearing the court, where

---

[1] 52 P.S. § 7283.

appropriate, shall "order and decree that the property be sold at a subsequent sheriff's sale, clear of all claims, liens, mortgages, ground rents, charges and estates, to the highest bidder at such sale."[2] Under the MCTLA, the owner of a property sold at a sheriff's sale may redeem the property within nine months from the acknowledgment of the sheriff's deed if the owner pays the bid amount, as well as other expenses paid by the purchaser, including the taxes and municipal claims, plus ten percent interest.[3] In June 2012, the state court entered a decree directing the Sheriff of Philadelphia County to sell Debtor's property and on November 12, 2012, Debtor's home was sold to Good Bet Trading for $12,500. Good Bet paid the taxes that were owed on the Property at the time of the sale. The Sheriff acknowledged the deed on February 15, 2013.

On October 25, 2013, within nine months of acknowledgment of the deed, Debtor filed a voluntary Chapter 13 bankruptcy petition in the Bankruptcy Court for the Eastern District of Pennsylvania.[4] Debtor's petition designated Good Bet as a creditor.[5] On November 5, 2013, Debtor filed a proposed bankruptcy plan, which listed Good Bet as having a secured claim for the total unpaid balance due on any interest Good Bet may have in the Property and proposed to pay the claim in sixty monthly installments of $266, for a total of $15,960.[6] The plan proposed that after entry of an order of discharge, the title to Debtor's interest in the Property shall revest in Debtor free and clear of all claims of all creditors provided for by the plan.[7]

---

[2] *Id.*

[3] 52 P.S. § 7293.

[4] Bankr. E.D. Pa. Pet. No. 13-19278.

[5] Appendix to the Brief of the Appellants (Appellants' App.) at 249.

[6] Appellants' App. at 376-78.

[7] Appellants' App. at 379.

Good Bet filed an objection to the plan which contended that it was not a creditor of Debtor and that the plan was proposed in bad faith.[8] Debtor then filed a proof of claim on behalf of Good Bet in the amount of $13,667.88 secured by an interest in the Property[9] pursuant to Federal Rule of Bankruptcy Procedure 3004.[10] Shortly thereafter, Debtor also filed his First Amended Plan.[11]

Good Bet did not object to the proof of claim, but both the City and Good Bet filed objections to the amended plan. The City raised four objections to confirmation of the proposed plan:[12] (1) the plan does not require Debtor to pay the 2013 real estate taxes owed on the Property, which became due after the Property was sold; (2) Debtor failed to file a motion to redeem the Property; (3) Good Bet does not have a secured claim and the plan violates state law by allowing Debtor to pay the redemption amount in installments instead of in a lump sum; and (4) Debtor's plan was not proposed in good faith. Good Bet joined the City's objection, and raised an additional objection that the plan was not feasible.[13]

An evidentiary hearing on the proposed plan was scheduled for November 3, 2014. Five days before the scheduled hearing, Debtor filed a Second Amended Plan, which again listed Good Bet as having a secured claim on the Property, and proposed to pay the claim in monthly installments.[14] At the hearing, the Bankruptcy Court determined that the Second Amended Plan made only two minor amendments which did not affect the City or Good Bet's rights and that it

---

[8] Appellants' App. at 389.

[9] Appellants' App. at 428.

[10] Fed. R. Bankr. P. 3004 ("If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable.").

[11] Appellants' App. at 363.

[12] Appellants' App. at 282.

[13] Appellants' App. at 382.

[14] Appellants' App. at 418.

was therefore appropriate to move forward with the hearing.[15] Good Bet did not appear at the hearing, and did not contact the Court before or after the hearing to explain its absence. The Bankruptcy Court therefore dismissed Good Bet's objections for lack of prosecution.[16]

The Bankruptcy Court *sua sponte* raised the issue of the City's standing at the hearing, and heard arguments from Debtor and the City on this issue, as well as evidence and argument on plan confirmation and the City's objections. At the close of the hearing, the Bankruptcy Court closed the record, and entered a briefing schedule for the City and Debtor.[17] The parties filed briefs as scheduled, and Good Bet filed a statement joining the City's brief.[18]

In January 2015, Debtor filed a Third Amended Plan (Plan), which again listed Good Bet as holding a secured claim on the Property, and proposed to pay the claim in monthly installments.[19] The Bankruptcy Court held a hearing on the Third Amended Plan on April 9, 2015, which the City, the Debtor, and the trustee attended. Good Bet again did not appear. Because the Plan made only minor changes, and the parties stated that the issues before the court remained the same and no further evidence needed to be presented, the court stated that it would issue its ruling and scheduled a final hearing in May for tracking purposes.[20] The final hearing was held on May 21, 2015. Good Bet, the Debtor, and the City all appeared. After informing the parties that the court's decision would be issued shortly, the hearing was adjourned.[21]

On June 9, 2015, the Bankruptcy Court entered an Order confirming the Plan. It first held that the City lacked standing to object to the Plan and that Good Bet failed to prosecute its

---

[15] Appellants' App. at 87.

[16] Appellants' App. at 219-20.

[17] Appellants' App. at 222-24.

[18] 13-19278,  Joiner to City of Philadelphia's Brief, Doc. No. 55.

[19] Appellants' App. at 28.

[20] Appellants' App. at 230-35.

[21] Appellants' App. at 239-42.

objections.[22] It then determined that Debtor's Plan complied with the requirements of § 1325 of the Bankruptcy Code, and confirmed the Plan, finding that, in the absence of any objections, Bankruptcy Courts are required to confirm a Chapter 13 plan where the criteria enumerated in § 1325 are satisfied.[23]

The City and Good Bet jointly appealed the Bankruptcy Court's Order to this Court. Appellants contend that the Bankruptcy Court erred in (1) holding that the City lacked standing to object to the Plan; (2) dismissing Good Bet's objections for lack of prosecution; and (3) confirming the Plan because it was not proposed in good faith, allows Debtor to redeem the Property without complying with the requirements of the MCTLA, and allows Debtor to redeem the Property without filing a motion to redeem in bankruptcy court under Federal Bankruptcy Rule of Procedure 6008 or filing a petition to redeem pursuant to the MCTLA.

## II.    STANDARD OF REVIEW

District courts "review the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof."[24] "A factual finding is clearly erroneous if the district court is firmly convinced, based on all the evidence, that the bankruptcy court made a mistake," but the district court "may not engage in independent fact

---

[22] *In re Minor*, 531 B.R. 564, n.3, 572 (Bankr. E.D. Pa. 2015).

[23] 11 U.S.C. § 1325. *See In re Minor*, 531 B.R. at 572 ("Under § 1325(a), the Court must confirm a Chapter 13 plan, in the absence of an objection by the Chapter 13 Trustee or an unsecured creditor, if (1) the plan satisfies the provisions of Chapter 13 and other applicable provisions of Title 11; (2) the requisite court fees and charges have been paid; (3) the plan is proposed in good faith; (4) the plan meets the liquidation alternative test-the value, as of the effective date of the plan, of property to be distributed under the plan on account of each unsecured claim must be not less than the amount that would have been paid on that claim if the estate of the debtor were liquidated under Chapter 7 on the effective date of the plan; (5) each secured creditor has accepted the plan, or the plan provides that each secured creditor retain its lien in addition to receiving the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim, not less than the allowed amount of such claim, or the debtor surrenders the property securing such claim; and (6) the plan is feasible.") (internal citation omitted).

[24] *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).

finding."[25] This Court has jurisdiction to review the Bankruptcy Court's decision pursuant to 28 U.S.C. §§ 158(a)(1) and 1334.

## III.    DISCUSSION

### A.    The City's Standing on Appeal

Before evaluating the City's contentions, the Court must determine whether the City has standing on appeal. "Appellate standing in the bankruptcy context is more restrictive than Article III standing."[26] "In conventional disputes, the class of potential plaintiffs is defined by the constitutional doctrine of standing. But in bankruptcy proceedings, which typically involve a myriad of parties...indirectly affected by every bankruptcy court order, the need to limit collateral appeals is particularly acute."[27] As a result, a party appealing a bankruptcy order must establish that they are a "person aggrieved" by the order, that is, that the order diminishes the party's property, increases their burdens, or impairs their rights.[28] "Person aggrieved is, of course, a term of art: almost by definition, all appellants may claim in some way to be aggrieved, else they would not bother to prosecute their appeals."[29] Therefore, a party must not be merely "exposed to some potential harm incident to the bankruptcy court's order" but their pecuniary interests must be "directly affected by that order."[30] "In other words, the effect must be more

---

[25] *In re Terry*, 543 B.R. 173, 177 (E.D. Pa. 2015).

[26] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 215 (3d Cir. 2004), *as amended* (Feb. 23, 2005).

[27] *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995) (internal citations and quotation marks omitted).

[28] *In re Combustion Eng'g, Inc.*, 391 F.3d at 215 (internal citations omitted).

[29] *H.K. Porter Co.*, 45 F.3d at 741 (internal quotation marks omitted).

[30] *In re Combustion Eng'g, Inc.*, 391 F.3d at 215 (internal citations omitted).

than incidental or indirect." [31] A party who suffers potential but not immediate harm or only collateral damage from a bankruptcy ruling lacks standing. [32]

The City alleges that it suffers two injuries from the Bankruptcy Court's Order: (1) decreased future tax revenue and (2) unpaid real estate taxes from 2013. First, the City contends that as a result of the Order confirming the Plan, it will receive less tax revenue because Debtor is unlikely to pay future real estate taxes and because the Order will deter future investors from purchasing property at the City's tax sales. Third Circuit law does not support the City's position.

In *H.K. Porter Co*, an insurance company, Travelers, appealed a bankruptcy court order reinstating withdrawn or defaulted claims by school district creditors against the debtor, a company that was insured by Travelers, after the creditors learned that the debtor had an insurance policy with Travelers that might cover the claims. [33] The Third Circuit held that Travelers was not a "person aggrieved" by the bankruptcy court's order, and therefore lacked standing to appeal because its pecuniary interests were not directly or immediately impacted. [34] Instead, any injury was contingent on "both on the success of the Claimants in their prosecution of claims against [the debtor], and on a judicial determination that the policy issued by Travelers covers the claims." [35] The alleged future harm to the City's tax revenue is similarly non-immediate and contingent, here, on the actions of Debtor and of potential investors. The harm does not stem directly from the Order confirming Debtor's Plan, but instead from either Debtor failing to pay future real estate taxes (which may or may not happen), or from investors deciding

---

[31] *In re Terry*, 543 B.R. 173, 178 (E.D. Pa. 2015).

[32] *Id.*

[33] 45 F.3d at 739-40.

[34] *Id.* at 742.

[35] *Id.*

to participate in fewer city tax sales (and lower or no bids being made such that a property is not sold or is sold for less than the City is owed). As a result, the City's alleged harm is only a potential, non-immediate, and indirect harm and is not the direct result of the Bankruptcy Court's Order confirming the Plan.

Second, the City argues that it is injured by the Order because it allows Debtor to redeem the Property without first paying the 2013 real estate taxes in a lump sum. This injury also does not stem directly from the Plan, as the Plan does not explicitly address payment of the 2013 taxes, is not required to do so, [36] and the 2013 taxes therefore will not be discharged by the bankruptcy.[37] Instead, the City's injury is the result of Good Bet's failure to pay the 2013 taxes after purchasing the Property at the tax sale in 2012 and from the City's failure to file a proof of claim against Debtor for these taxes.[38]

The Court therefore finds that the City lacks standing to challenge the Bankruptcy Court's ruling confirming Debtor's Plan and holding that Good Bet failed to prosecute its objections to the Plan. The City does have standing, however, which Debtor does not dispute, to

---

[36] *See* 11 U.S.C. § 1305 ("A proof of claim may be filed by any entity that holds a claim against the debtor—for taxes that become payable to a governmental unit while the case is pending"); 11 U.S.C. § 1322(b) ([T]he Plan *may*…provide for payment of all or any part of any claim allowed under section 1305 of this title.") (emphasis added).

[37] 11 U.S.C. § 1328 ("[A]s soon as practicable after completion by the debtor of all payments under the plan…the court shall grant the debtor a discharge of all debts *provided for by the plan*.") (emphasis added); *In re Halabu*, 501 B.R. 685, 696-97 (Bankr. E.D. Mich. 2012).

[38] The City cannot fail to file a proof of claim for the 2013 taxes and then later object to the Plan's failure to address these post-petition taxes. *See Matter of Fletcher*, No. 88-11571, 1990 WL 305558, at *2 (Bankr. N.D. Ind. Sept. 28, 1990) ("Section 1305 allows a post-petition claimant to file a proof of claim only if it so chooses. The claimant is given complete control over the options of: being paid through the plan, if the plan provides for post-petition claims; seeking relief from stay; or pursuing recovery of the obligation in state court after the closing of the case.").

challenge the Bankruptcy Court's ruling that the City lacked standing to object to the Plan confirmation before the Bankruptcy Court.[39]

### B.     The City's Standing Before the Bankruptcy Court

The City contends that the Bankruptcy Court erred in finding it lacked standing, again arguing that it was injured by Debtor's Plan because the City suffers from or will suffer from decreased tax revenue and the unpaid 2013 real estate taxes. Although insufficient to provide the City with appellate standing, the analysis of standing before the Bankruptcy Court is different. Under Chapter 13 of the Bankruptcy Code, "[a] party in interest may object to confirmation of the plan."[40] To establish that it is a party in interest that may object to the confirmation of Debtor's Plan, the City must satisfy the three elements of Article III standing because "Article III standing and standing under the Bankruptcy Code are effectively coextensive."[41] First, the City "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[42] Second, the injury must be "fairly traceable to the challenged action of the [Debtor] and not the result of the independent action of some third party not before the court."[43] Third, the injury must be redressable.[44] It must be likely and not speculative that the injury will be redressed by a favorable decision.[45] "[E]ach element must be supported in the same way as any other matter on

---

[39] *See e.g.*, *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, n. 23 (3d Cir. 2011) (stating that a party to a bankruptcy may appeal a determination that that the party lacks standing).

[40] 11 U.S.C. § 1324.

[41] *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011)

[42] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).

[43] *Id.* (citations and quotation marks omitted).

[44] *Id.* at 561.

[45] *Id.*

which the [party] bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[46]

### (1)    Decreased Future Real Estate Tax Payments on the Property

The City argues that it is injured by Debtor's Plan because Debtor is unlikely to pay future real estate taxes, whereas Good Bet is more likely to do so. Allegations of possible future injuries are insufficient to establish standing.[47] A threatened future injury must instead be "certainly impending," or there must be a "substantial risk that the harm will occur,"[48] and the injury must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all."[49]

Here, the City argues that there is a substantial risk that Debtor will not pay future real estate taxes because the Debtor already owes the 2013 taxes on the Property, and the Property was originally sold because he failed to pay real estate taxes. Debtor's past failure to pay real estate taxes is insufficient, by itself, to create a substantial risk that he will imminently[50] fail to pay future real estate taxes. Any potential injury to the City, assuming the injury actually occurs, the amount of that injury, and when the injury might occur is purely hypothetical or conjectural. This is especially so in light of the fact that the record establishes that the 2013 taxes are owed because Good Bet failed to pay them, that Debtor paid the 2014 taxes, that Debtor has made the required payments under the Plan,[51] and that Debtor's income has greatly increased since the

---

[46] *Id.*

[47] *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).

[48] *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal citations and quotations omitted).

[49] *Reilly,* 664 F.3d at 42 (internal quotations and citations omitted).

[50] *Lujan* , 504 U.S. at n.2.

[51] Appellants' App. at 125, 186-187.

year the Property was sold.[52] The City did not dispute this evidence before the Bankruptcy Court,

nor did the City allege or provide evidence, for example, that Debtor is unable to pay the real

estate taxes owed or future real estate taxes, or that Debtor intends not to make payments.

Moreover, the City made no claim in the bankruptcy proceeding for the 2013 taxes.

The City also argues that there is a substantial risk of non-payment because the Plan

"specifically provides that no real estate taxes are to be paid under [it]"[53] and because the Plan

and § 362(a) of the Code prevent the City from instituting enforcement actions to collect unpaid

taxes for five years.[54] First, Debtor is obligated to pay future real estate taxes, as not only does

the Plan explicitly require Debtor to pay them,[55] but they are not discharged by the bankruptcy.[56]

Second, it is purely speculative that the City would need to institute an enforcement action within

five years to collect the taxes Debtor is required to pay,[57] and even so, there are avenues for the

---

[52] In the year prior to filing his Chapter 13 petition, Debtor's income totaled approximately $5,000. Appellee App. at 22. Since filing the petition, Debtor's income has increased, and he now has an average monthly income of approximately $1,580. Appellee App. at 67-68.

[53] Appellant Brief, Doc. No. 6 at 64.

[54] Upon filing of a Chapter 13 bankruptcy petition, there is an automatic stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). Paragraph 10 of the Plan states that "all creditors holding claims…agree to take no steps to collect their claims in any other forum or in any manner inconsistent with this plan." Appellants' App. at 32. It is unclear whether this provision of the Plan applies to future real estate taxes that are incurred after the Plan was confirmed. *See* 11 U.S.C. § 101 (defining creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.").

[55] Appellants' App. at 32-33 ("Debtor and his co-debtor siblings shall be responsible for paying the current water/sewer bills and real estate taxes for the Property or making appropriate payment arrangements with the City of Philadelphia regarding the real estate taxes.").

[56] *In re Minor*, 531 B.R. 564, n.4 (Bankr. E.D. Pa. 2015); 11 U.S.C. § 1328 ("[A]s soon as practicable after completion by the debtor of all payments under the plan…the court shall grant the debtor a discharge of all debts *provided for by the plan*.") (emphasis added); *In re Halabu*, 501 B.R. 685, 696-97 (Bankr. E.D. Mich. 2012).

[57] In fact, the "making of an assessment for any tax and issuance of a notice and demand for payment of such assessment" is exempted from the automatic stay," 11 U.S.C. § 362(b)(9), and thus the automatic stay provision does not prevent "a government entity [from] determin[ing] the amount of tax due and send[ing] a bill notifying the taxpayer of the amount due." *Reedsburg Util. Comm'n v. Grede Foundries, Inc.*, No. 10-CV-84-BBC, 2010 WL 2159358, at *12 (W.D. Wis. May 24, 2010). *See also Morgan Guar. Trust Co. of New York v. Am. Sav. & Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986) ("We conclude that the language and purposes of section 362(a) do not bar mere requests for payment unless some element of coercion or harassment is involved.").

City to seek relief from the automatic stay.[58] As a result, the City has failed to establish a substantial risk of decreased tax payments as the result of the Plan because its alleged injury is "contingent on the occurrence of events that may never happen,"[59] (i.e. Debtor failing to pay his real estate taxes) and "one cannot describe how the [City] will be injured without beginning the explanation with the word 'if.'"[60]

The City also argues, relying on *In Re Amatex Corporation*, that because it is a future claimant, it has a sufficient stake in the bankruptcy proceeding to establish standing.[61] In *In re Amatex*, the Third Circuit held that future asbestos claimants who had already been exposed to asbestos but had not yet exhibited symptoms, "have a sufficient interest to require some representation during the reorganization proceedings."[62] However, the Court of Appeals also held that "courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation," and thus, future claimants are not automatically parties in interest with standing to object to a reorganization Plan.[63] As the City does not have a substantial risk of imminent injury, and while the City may have a claim against Debtor at some point in the future, that possibility is not, in this case, sufficient to establish that the City has standing.[64]

---

[58] 11 U.S.C. § 362(d).

[59] *In re W.R. Grace & Co.*, 532 F. App'x 264, 268 (3d Cir. 2013).

[60] *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 298 (3d Cir. 2003). The City also argues that it has a property interest in ensuring that future taxes are paid on the property, as one of the purposes of a sheriff's sale is to "place the property back on the tax roles [*sic*]." Appellant's Reply Brief, Doc. No. 8 at 20. Even if the City has a property interest in future taxes being paid on the property, for the reasons discussed above, any injury to this alleged property interest is too speculative to constitute an injury in fact.

[61]  *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985).

[62] *Id.* at 1041.

[63] *Id*.

[64] *See also*, *In re Tyndale*, 534 B.R. 272, n.6 (Bankr. E.D. Pa. 2015) (distinguishing *In re Amatex* from city's claim that it had standing to assert injury to post-petition real estate tax revenue  because future asbestos claimants were exposed to asbestos prior to the bankruptcy petition had pre-petition claims). Moreover, unlike in *In*

Finally, even if the risk of unpaid future real estate taxes were an injury in fact, the City has failed to establish that the Debtor is less likely to pay real estate taxes than Good Bet and thus that the alleged future injury is fairly traceable to the Plan or redressable by a favorable decision. As Good Bet would own the Property if the Plan were not confirmed, and because Good Bet also failed to pay real estate taxes in the past, the City, by its own argument, is at risk of the real estate taxes on the Property being unpaid whether or not the Plan is confirmed.

### (2)      Deterring Investors from Participating in Tax Sales

Next, the City argues that it is injured by the Plan because investors will be deterred from participating in future tax sales and it therefore will receive less tax revenue because there will be less competition at these tax sales. First, the City argues generally that unknown investors will be deterred from participating in tax sales. This alleged injury depends on (1) fewer investors participating in tax sales such that, (2) there is reduced competition at the sales, (3) which results in the City receiving lower bids for properties or no bids on more properties, and (4) the bids received being too low to compensate the City for all delinquent taxes owed on a particular property. This risk is too remote and attenuated to establish a concrete injury in fact as it is "dependent on entirely speculative, future actions of [] unknown third-part[ies]"[65] and it is merely speculative that the City will receive no bids on more properties or more bids that are too low to compensate the City for all taxes owed.

Second, the City also specifically predicts that Good Bet will be less likely to participate in future tax sales because Good Bet will not receive payment in full for the Property for five years and therefore will have less money to invest in future tax sales. The City has not alleged

---

*Re Amatex*, as  discussed below, the City has not established that it has a practical stake in the outcome of the proceeding, as it has failed to establish that any alleged injury would be redressed by the proceeding.

[65] *Reilly,* 664 F.3d at 42.

any facts in support of this prediction. For example, the City has not alleged that Good Bet planned to participate in future sales, that Good Bet will no longer be participating in particular sales, nor when these sales will occur. The Bankruptcy Court therefore properly held that this harm is no more than a possible, speculative and remote future injury and cannot establish standing.[66]

### (3)    2013 Real Estate Taxes Paid in Lump Sum

The City argues that it has a legally protectable property interest under the MCTLA and *City of Philadelphia v. Frempong*[67] in having the 2013 real estate taxes paid in a lump sum prior to redemption. As a result, it contends, the City has standing to object to the Plan because the Plan does not require the 2013 taxes to be paid in a lump sum before Debtor redeems the Property.

In *Frempong*, the Court of Common Pleas determined that a party had not established his readiness to pay the redemption money as required under the MCTLA,[68] and relied on evidence that the appellant owed real estate taxes on multiple properties to support its holding.[69] While the court was concerned with the appellant's ability to pay both the redemption amount and the other

---

[66] *In re Minor*, 531 B.R. at 570. The City argues that a contingent injury is sufficient to establish standing, relying upon *Clinton v. New York*, 524 U.S. 417 (1998) and *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490 (7th Cir. 2005). However, the City's reliance on these cases is misplaced, as they do not stand for the proposition that a contingent injury is sufficient to establish an injury in fact, but instead hold that there is an injury in fact where the injury is immediate and concrete. In *Clinton*, for example, the Supreme Court found that while there were potential, future injuries that were contingent, the plaintiffs had standing because there was also "a significant immediate injury." 524 U.S.at 430-31, n.16. The City has not alleged that it suffers from any significant, immediate injury.

[67] *City of Philadelphia v. Frempong*, 2014 WL 1335496 (Pa.Com.Pl. February 21, 2014).

[68] 53 Pa. Stat. Ann. § 7293(b) ("Any person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money.").

[69] *Frempong*, 2014 WL 1335496 at *3 ("[H]e was [not] ready and able to pay the amount required for redemption under the applicable statute, including for large and numerous other municipal tax delinquencies within the same jurisdiction."). *See also U.S. Bank N.A. v. Frempong*, 2010 WL 2798422 (Pa.Com.Pl. June 15, 2010) ("Here, although their Petition to Redeem is timely, the Frempongs failed to convince this Court that they met the requirements of 53 P.S. § 7293. First, the Frempongs owe municipal taxes on other properties in Philadelphia. The Frempongs were unable to credible [*sic*] establish that they were ready and able to pay the amount needed for redemption as required under 53 P.S. § 7293(b).")

municipal taxes he owed on other properties, the court did not require the taxes to be included in the redemption amount or to be paid prior to redemption, and did not hold that all real estate taxes must be paid in a lump sum prior to redemption. Indeed, the MCTLA requires the redeeming party to pay only taxes and municipal claims which were "actually paid."[70] As Good Bet did not pay the 2013 taxes, Debtor would not be required to pay them before redemption. Because the City has not set forth any other basis for its alleged legally protected interest in having the 2013 property taxes paid in a lump sum prior to redemption, it has failed to demonstrate that it has a protectable interest in having the 2013 taxes included in the redemption amount, or paid before the Property is redeemed,[71] and therefore the City has suffered no injury from the Plan.

Even if the alleged harm from unpaid 2013 taxes were an injury in fact, any harm is not fairly traceable to the bankruptcy Plan but rather to Good Bet's failure to pay the taxes and the City's failure to file a proof of claim against Debtor for the 2013 taxes. As previously discussed, the Plan does not address the 2013 taxes that went unpaid by Good Bet because the City never filed a proof of claim against Debtor under 11 U.S.C. § 1305 for any unpaid taxes that became payable to it while the case was pending and Debtor was not required to provide for their payment in his Plan.[72] The taxes therefore will not be discharged by the bankruptcy, and Debtor will still be required to pay them.[73] Moreover, to the extent the City argues generally that it has

---

[70] 53 Pa. Stat. § 7293(a).

[71] The City argues that even under this interpretation of *Frempong*, the Debtor is required to pay the real estate taxes prior to redemption, in order to demonstrate readiness to pay the redemption amount. However, the *Frempong* Court did not establish an absolute requirement that all outstanding real estate taxes be paid prior to redemption, even in order to demonstrate readiness to pay. As a result, the City does not have a legally protectable interest in the 2013 taxes being paid prior to redemption.

[72] 11 U.S.C. § 1322(b) ([T]he Plan *may*…provide for payment of all or any part of any claim allowed under section 1305 of this title.") (emphasis added); *Matter of Fletcher*, No. 88-11571, 1990 WL 305558, at *2.

[73] 11 U.S.C. § 1328 ("[A]s soon as practicable after completion by the debtor of all payments under the plan…the court shall grant the debtor a discharge of all debts *provided for by the plan*.") (emphasis added).

an interest in the 2013 taxes being paid in a lump sum, the City would not necessarily be redressed by a ruling sustaining its objections to the Plan, as the City has not alleged that Good Bet would pay the 2013 taxes in a lump sum upon a favorable ruling. Accordingly, the Court affirms the ruling of the Bankruptcy Court with regard to the City's standing.

### C.     Good Bet's Failure to Prosecute

Good Bet argues that the Bankruptcy Court erred in dismissing its objections for failure to prosecute after Good Bet failed to appear at the confirmation hearing and failed to file objections to the Second Amended Plan.[74]

Good Bet first argues that the Bankruptcy Court erred in dismissing its objections for failure to prosecute because it lacked notice that it needed to appear at the November 3, 2014 evidentiary hearing. It argues that Local Bankruptcy Rule 3015-2(a)(3) required the hearing to be rescheduled because Debtor filed a Second Amended Plan six days prior to the scheduled confirmation hearing. Local Rule 3015-2 states that "[i]f a modified…chapter 13 plan is served less than…28 days before the date of a chapter 13 confirmation hearing date, the debtor shall advise the courtroom deputy for the judge to whom the case is assigned on or before the date of service that the confirmation hearing must be rescheduled."[75] Even if Debtor had been required to request that the hearing be rescheduled, Good Bet still received notice of the hearing,[76] no order was issued cancelling or rescheduling that hearing, and therefore Good Bet was required by the Bankruptcy Court's Order to appear. If it had done so, it could have requested a continuance. Instead, at the hearing, the Bankruptcy Court determined that the two minor

---

[74] *In re Minor*, 531 B.R. at n.3.

[75] Local Rule 3015-2(3).

[76] Appellee App. 53-54.

16

amendments made in the Second Amended Plan did not affect the City or Good Bet's rights and that it was therefore appropriate to move forward with the hearing.[77] Moreover, Good Bet never explained to the Bankruptcy Court why it did not appear.

Next, Good Bet argues that the Bankruptcy Court abused its discretion by dismissing Good Bet's objections as a sanction for failure to prosecute without considering the factors enumerated by the Third Circuit in *Poulis v. State Farm Fire and Casualty Co.*[78] In *Poulis,* the Third Circuit held that, because "dismissals with prejudice…are drastic sanctions," before dismissing a case with prejudice or entering a default judgment as a sanction for failure to prosecute, courts must consider the following six factors:

> the extent of the *party*'s personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense."[79]

Consideration of these factors "comport[s] with the underlying concern *Poulis* sought to address, namely that dismissal as a sanction before adjudication of the merits deprives a party of her day in court."[80] This concern, however, must be balanced with a court's ability to "prevent undue delays and to achieve the orderly disposition of cases.[81]

The Bankruptcy Court did not balance the *Poulis* factors before dismissing Good Bet's objections for failure to prosecute.[82] Typically, where a court dismisses a case for failure to

---

[77] Appellants' App. at 87.

[78] *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).

[79] 747 F.2d at 868 (emphasis in original).

[80] *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013).

[81] *In re Asbestos Products Liab. Litig. (No. VI)*, 718 F.3d at 246.

[82] The Court notes that some bankruptcy courts have held that "a party who wishes to prosecute an objection to confirmation must appear at the confirmation hearing or the objection is deemed waived for abandoned." *See e.g.*, *In re Wolf*, 162 B.R. 98, 104 (Bankr. D.N.J. 1993); *In re Spansion, Inc.*, 426 B.R. 114, n.4

prosecute without considering these factors, the appellate court will remand the case to the trial court to allow it to do so.[83] Remand is not necessary here because the facts relating to Good Bet's failure to appear and press its objections throughout the bankruptcy proceeding are undisputed and clearly support the Bankruptcy Court's decision.[84]

      In evaluating the *Poulis* factors, the Court notes that no factor is dispositive, and there is no "magical formula" or "mechanical calculation."[85] In fact, "not all of the *Poulis* factors need be satisfied."[86] The factor that most favors dismissal is Good Bet's history of dilatoriness. While Good Bet argues that its failure to appear at one hearing is insufficient to establish a history of dilatoriness, the record clearly establishes that after filing its objections to the First Amended Plan, Good Bet did almost nothing to prosecute them. Good Bet failed to appear at the evidentiary hearing held on November 3, 2014, the only confirmation hearing in which evidence was presented and legal arguments were made,[87] also failed to appear at the April 9, 2015 confirmation hearing on Debtor's Third Amended Plan, and despite these absences, never contacted the Bankruptcy Court to explain why it failed to appear, never requested additional hearings, and never presented or sought to present evidence on any of its objections.[88] The only

---

(Bankr. D. Del. 2010). While the Third Circuit has not explicitly determined whether bankruptcy courts must apply the *Poulis* factors before dismissing a party in interest's objections to a Chapter 13 plan, the Court will apply the *Poulis* factors because the Third Circuit's concerns about the drastic sanction of dismissal, and the importance of adjudicating cases on their merits are apparent in this context.

[83] *Livera v. First Nat. State Bank of New Jersey*, 879 F.2d 1186, 1194 (3d Cir. 1989) (stating that it would not engage in the *Poulis* balancing because it would require factual findings).

[84] *Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986) (engaging in *Poulis* balancing even though the district court failed to do so).

[85] *In re Asbestos Products Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) (internal citations and quotation marks omitted).

[86] *Id.* (internal citations and quotation marks omitted).

[87] Good Bet was aware that the November 3, 2014 hearing was scheduled to allow the parties to present evidence on the objections, plan confirmation, and the trustee's motion to dismiss. *See* Appellants' App. 42-50; Order 10/6/14, 13-19278, Doc. No. 46 (continuing hearing until November 3, 2014).

[88] Good Bet argues that its attorney did inform the Bankruptcy Court of its absence, as counsel told the City's attorney that he was having car troubles and the City's attorney communicated this information to the

actions Good Bet took to prosecute its objections after the evidentiary hearing were to (1) file a statement joining the City's Brief in support of the City's Objection to the Confirmation of the Proposed Plan[89] and (2) to appear at the final hearing in May, which was scheduled for tracking purposes only, as the Court expected to issue its decision before the May hearing.[90] At this final hearing, Good Bet again did not attempt to explain its prior absences, argue in support of its objections, or put on evidence to support them.[91]

Good Bet's repeated failure to directly prosecute its own case, explain its absences, and request relief from the Bankruptcy Court, instead complaining for the first time only months later on appeal of the Bankruptcy Court's decision, after receiving a result contrary to its interests,[92] is sufficient to establish a history of dilatory conduct.[93] The degree of Good Bet's dilatoriness and its failure to explain or remedy it certainly suggests that its conduct was willful, and thus *Poulis*'s fourth factor also weighs in favor of dismissal.

Additionally, the parties were prejudiced by Good Bet's conduct. Bankruptcy courts have busy dockets and Good Bet failed to make any effort to seek relief while the bankruptcy was still pending. Although the Bankruptcy Court dismissed Good Bet's objections at the evidentiary hearing and did not enter its order in writing until it issued the Order confirming the Plan, Good

---

Bankruptcy Court. Appellants' App. at 190. However, Good Bet sought no relief in the Bankruptcy Court in connection with the failure to appear.

[89] 13-19278,  Joiner to City of Philadelphia's Brief, Doc. No. 55. In fact, the Court notes that Good Bet did not even file a separate brief from the City on appeal before this Court.

[90] Appellants' App. at 234-35.

[91] *Watts v. Blake-Coleman*, No. CV 2011-61, 2013 WL 3338588, at *2 (D.V.I. June 28, 2013) (finding *Poulis* factors weighed in favor of dismissal where plaintiff failed to appear at status conferences and trial and provided no explanation for these failures).

[92] "[F]ailing to appear at a trial is a quintessential example of a failure to prosecute. *Wareham v. Pennsylvania Dep't of Corr.*, No. 2:13-CV-0188, 2014 WL 5361547, at *5 (W.D. Pa. Oct. 21, 2014)) (internal citation omitted).

[93] *Briscoe v. Klaus*, 538 F.3d 252, 261 (3d Cir. 2008) ("[C]onduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness.").

Bet still could have explained its non-appearance, requested a continuance, or sought other relief from the Bankruptcy Court. Had it done so, it could have obviated the need for this appeal and it therefore impaired efficient administration of the bankruptcy case. Finally, as will be discussed, Good Bet's objections are not meritorious.[94]

While it is unclear whether Good Bet itself was personally responsible for this dilatory conduct or whether alternative sanctions may have been effective given Good Bet's lack of participation,[95] the Court finds that the extensive history of dilatory conduct, its willful nature, the prejudice to the parties, and the lack of merit in Good Bet's claims strongly outweigh these unknowns.[96] The Court therefore holds that the Bankruptcy Court did not abuse its discretion in dismissing Good Bet's objections for failure to prosecute.[97]

### D.     Whether the Bankruptcy Court Erred in Confirming Debtor's Plan

Although the Court holds that the City lacks standing to challenge the Bankruptcy Court's Order and affirms the Bankruptcy Court's ruling that Good Bet failed to prosecute its objections, their objections to the Plan lack merit in any event. On appeal, the City and Good Bet argue that the Bankruptcy Court erred in confirming Debtor's Plan because the Plan permitted Debtor to redeem the Property through the Plan in violation of state law and because the Plan was not filed in good faith. Appellants first argue that the Bankruptcy Court erred in finding that

---

[94] The Court notes that the Bankruptcy Court did find that the plan was feasible. *In re Minor*, 531 B.R. at 573.

[95] *See e.g.*, *Watts v. Blake-Coleman*, No. CV 2011-61, 2013 WL 3338588, at *4 (D.V.I. June 28, 2013) ("Based on Watts's absence thus far, it is not evident that alternative sanctions will prompt her to take action in prosecuting this matter. As such, the ineffectiveness of alternative sanctions weighs in favor of dismissal.").

[96] *See e.g.*, *In re Asbestos Products Liab. Litig. (No. VI)*, 718 F.3d at 248 ("Here, we have little difficulty concluding that the District Court considered and weighed the factors, viewing the dilatory and prejudicial aspects as outweighing all others.").

[97] As the Court so holds, it need not address Debtor's argument that Poulis does not apply because Good Bet has willfully abandoned its objections, *Spain v. Gallegos*, 26 F.3d 439, 454–55 (3d Cir. 1994), nor Good Bet's argument that the Bankruptcy Court erred in holding that its objections were mooted by the filing of the Third Amended Plan.

Good Bet had an allowed secured claim that could be modified by Debtor's Chapter 13 Plan. Next, Appellants argue that Debtor cannot redeem the Property through a Chapter 13 Plan, but instead could only redeem the Property by filing a motion to redeem in bankruptcy court, or filing a petition to redeem under the MCTLA. Finally, Appellants argue that the Bankruptcy Court erred in confirming the Plan because it was not filed in good faith.

### (1) Whether Good Bet had an Allowed Secured Claim that Could be Modified by Debtor's Plan

Appellants first argue that the Bankruptcy Court erred in confirming Debtor's Plan because it allowed Debtor to redeem the Property by paying the redemption amount in installments over the life of the Plan, rather than in a lump sum within nine months of the acknowledgment of the sheriff's deed, as Appellants argue is required by the MCTLA. Bankruptcy courts have "broad authority to modify creditor-debtor relationships"[98] and Debtor argues that his Plan properly modified his relationship with creditor Good Bet under § 1322(b) of the Bankruptcy Code.

Section 1322(b) allows Chapter 13 plans to "modify the rights of holders of secured claims."[99] The Bankruptcy Code defines a secured claim as "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest."[100]  The Supreme Court has explained that Congress intended "to adopt the broadest available definition of 'claim,'"[101] and has held that a debtor has a claim where he has an enforceable obligation, even if the obligation cannot be enforced in a civil proceeding. [102] A claim is secured where there is a lien on the

---

[98] *United States v. Energy Res. Co.,* 495 U.S. 545, 549 (1990).

[99] 11 U.S.C. § 1322(b).

[100] 11 U.S.C. § 506.

[101] *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

[102] *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990).

property.[103] A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation."[104]

Appellants contend that Good Bet did not have a secured claim that could be modified under § 1322(b). They argue that because under Pennsylvania law Good Bet acquired absolute title to the Property at the Sheriff's sale, Debtor has no ownership interest in the Property, Good Bet does not have a lien on the Property, and therefore Good Bet does not hold a secured claim that can be modified by the Plan. Debtor contends that Good Bet acquired only an inchoate or defeasible interest in the Property at the tax sale, with a right to payment of the redemption amount, and that this interest does not ripen into absolute title until the expiration of the redemption period. As a result, because Debtor filed his Chapter 13 petition within the nine-month redemption period,[105] Debtor argues that Good Bet has a claim for the redemption amount, which is secured by a lien on the Property should Debtor fail to pay.

As a debtor's ["p]roperty interests are created and defined by state law,"[106] the Court must look to Pennsylvania law to determine Good Bet and Debtor's interests in the Property. Appellants argue that § 7283 of the MCTLA is clear that Good Bet acquired absolute title at the tax sale that is free of all claims, as it states that purchasers "shall take and forever thereafter have, an absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, ground rents, charges and estates of whatsoever kind."[107] However, § 7283 also

---

[103] 11 U.S.C. § 506.

[104] 11 U.S.C. § 101(37).

[105] The deed was acknowledged on February 15, 2013 and Debtor filed his Chapter 13 petition on October 25, 2013.

[106] *Butner v. United States*, 440 U.S. 48, 55 (U.S. 1979).

[107] 53 P.S. § 7283.

states that the title acquired is *"subject...to the right of redemption as provided by law."*[108] As the MCTLA also provides that "[t]he owner of any property sold under a tax or municipal claim…may…redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed,"[109] the statute does not clearly and unambiguously provide purchasers with absolute title at the tax sale. There does not appear to be any relevant appellate case law in the Third Circuit or Pennsylvania interpreting the MCTLA. Both Appellants and Appellees cite cases interpreting other statutes that they claim support their respective positions.[110]

The Court looks to the statutory language and Pennsylvania cases under various tax statutes and concludes that Good Bet did not receive absolute title at the tax sale and that Debtor still has an interest in the Property.[111] Appellants argue that cases so holding are "archaic" and

---

[108] 53 P.S. § 7283 (emphasis added).

[109] 53 P.S. § 7293.

[110] Appellants rely on cases involving mortgage foreclosure sales to support their position that Pennsylvania courts follow the "gavel rule," whereby purchasers acquire absolute title to the property at the tax sale, rather than after the redemption period. *See e.g., In Re Connors,* 497 F.3d 314 (3d Cir. 2007) (holding that under the plain and ambiguous language of § 1322(c)(1) of the Bankruptcy Code, debtors must cure default before the gavel falls at the foreclosure sale). Debtor argues that Pennsylvania courts and courts in the Third Circuit have consistently treated all tax sales subject to a right of redemption, no matter the statute creating the right, as resulting in the transfer of an inchoate interest that ripens into absolute title only after the expiration of the redemption period. *See e.g., Shalemiller v. McCarty,* 55 Pa. 186, 188 (1867) ("The uniform understanding and belief of the profession and people of this Commonwealth, for over half a century, has been, that a purchaser of unseated lands for taxes, when he receives his deed, takes but an inchoate or inceptive title, which requires the lapse of two years from the date of sale to ripen into an absolute title."); *Hess v. Potts,* 32 Pa. 407, 410 (1859) ("He is not about to purchase an estate when he goes to redeem--he simply goes to pay a debt."); *Pivirotto v. City of Pittsburgh,* 515 Pa. 246, 250 (1987) (stating that once the purchaser's bid was accepted, the "sale should be perfected subject only to the record owner's redemption as provided by law" and that a sale for delinquent taxes gives the purchaser defeasible title.).

[111] This interest at the very least includes the right to redeem. While Appellants argue that the right to redemption is not an interest in property, Pennsylvania courts have found that it is. *See e.g., City of Philadelphia v. Unknown,* 30 Pa. Super. 516, 521 (1906); *Petition of Indiana Cty.,* 360 Pa. 244, 249 (1948); *Appeal of Gault,* 33 Pa. 94, 98 (1859). Appellants argue that courts have stated that redemption is a right subject to the control of the Legislature, *Bernitsky v. Schylkill County,* 112 A.2d 120, 123 (Pa. 1955), and that it is a "process," *Union Nat. Bank v. Estate of Shevlin,* 897 A.2d 1241, 1244 (Pa. Super. 2006), but Appellants fail to explain how these cases are inconsistent with it also being an interest in property. Finally, Appellants argue that the Supreme Court in *Appeal of Singer* stated that redemption was a personal privilege and not real estate, but Appellants cite to the syllabus, and even so, the weight of authority in Pennsylvania has found that it is an interest in property. *Appeal of Singer,* 7 A. 800 (Pa. 1887).

23

"ancient"; however, they have not been overruled[112] and are in harmony with the plain language of the statute. Moreover, the Pennsylvania Superior Court more recently held, in the context of determining which expenses a purchaser could recover from the redeeming party under the MCTLA, that "title to the property sold is a defeasible one and does not mature into a legal title until the period of redemption has expired."[113] As a result, the court reasoned, "the point in time legal title came into fruition for the purchaser was [not] the pivotal stage in deciding when expenses made were recoverable" because if it were, "then no costs incurred prior to the one year redemption period could be recouped.[114] The Pennsylvania courts' have liberally construed the statutory right of redemption "so as to effect its object and to promote justice,"[115] which is consistent with the purpose of the MCTLA "not to strip the owner of his or her property but to collect municipal claims."[116]

Because Good Bet acquired only an inchoate interest in the property subject to Debtor's right to redemption, Debtor has an allowed[117] secured claim that can be modified by the Plan.[118] The Supreme Court has held that criminal restitution is a claim under the Code because it is an

---

[112] *Mohn v. Hahnemann Med. Coll. & Hosp. of Philadelphia*, 357 Pa. Super. 173, 176 (1986) ("At the outset, be it known that, regardless of the vintage of a case or its attack by legal scholars in their erudite treatises on the state of the law, in the final analysis it is for the highest court in this jurisdiction to decide when and to what extent, if any, a case has lost its vibrancy so as to signal its demise. No trial court is to usurp this function under the guise of changes presaged by the winds of judicial time, marked by the shifting tides of legal thinking.").

[113] *City of Philadelphia to Use of Philadelphia Hous. Dev. Corp. v. Novick*, 582 A.2d 1363, 1366 (Pa. Super. 1990). *See also In re Terry*, 543 B.R. 173, 180 (E.D. Pa. 2015) (Holding that under the MCTLA, "the purchaser acquires a defeasible title, subject to the debtor's equitable right of redemption during the redemption period.").

[114] *Id.*

[115] *City of Philadelphia v. Taylor*, 435, 439, 465 A.2d 33, 35 (Pa. Super. 1983).

[116] *City of Philadelphia v. F.A. Realty Investors Corp*., 95 A.3d at 386.

[117] Under 11 U.S.C. § 502 a claim is deemed allowed unless a party in interest objects to the proof of claim. Good Bet objected to Debtor's Plan, but not the proof of claim that he filed on Good Bet's behalf. To the extent Good Bet's objections to the Plan constituted an objection to the proof of claim under § 502, the Court has held that the Bankruptcy Court properly overruled the objections.

[118] A secured claim is "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506.

obligation that can be enforced by the threat of probation and incarceration.[119] Debtor similarly has an obligation to pay the redemption price, which is enforceable by the threat of absolute title vesting in Good Bet. This claim is therefore secured by Good Bet's interest in the property, as if Debtor does not comply with his obligation to pay the redemption price, the obligation is enforceable against his property.[120]

### (2)   Motion or Petition for Redemption

Appellants next contend that Debtor could only redeem the property by (1) filing a motion to redeem in bankruptcy court under Federal Rule of Bankruptcy Procedure 6008[121] or (2) filing a petition for redemption pursuant to the MCTLA within the time period specified by the statute[122] or the time period as extended by the Bankruptcy Code under § 108.[123] Appellants argue that other than Rule 6008 and § 108, the Bankruptcy Code does not allow debtor to exercise state law rights in bankruptcy court.

The Court has already held that Debtor's Plan properly modified Good Bet's secured claim under 11 U.S.C. §1322(b). Neither Rule 6008 nor § 108 require Debtor to file a motion or

---

[119] *Davenport*, 495 U.S. at 559.

[120] A lien is an "interest in the property to secure payment of a debt or performance of an obligation."11 U.S.C. § 101(37). Even Appellants note that courts in other jurisdictions have held that purchasers of property at tax sales hold secured claims under § 1322(b) when they do not receive absolute title at the sale. *See e.g.*, *In re Francis*, 489 B.R. 262, 266-68 (Bankr. N.D. Ga. 2013).

[121] Fed. R. Bankr. P. 6008 (On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law.").

[122] 53 P.S. § 7293.

[123] 11 U.S.C. § 108(b) states: "Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief."

petition to redeem instead of filing a Chapter 13 plan to pay a secured claim under § 1322(b) where appropriate.[124] As a result, Debtor was not required to file a motion or petition to redeem.

Appellants contend, however, that the Third Circuit in *In Re Connors*[125] held that debtors must file a petition for redemption within the time period specified under state law or within 60 days after the order for relief. In *In re Connors*, after holding that § 1322(c)(1) requires debtors to cure default on a mortgage before the property is sold at the foreclosure sale, the Third Circuit held that the debtor could not cure his default because his residence had already been sold at the foreclosure sale.[126] The Third Circuit then noted that its ruling did not "cut off the debtor's state-law post-sale remedies," which may "continue past the date of the foreclosure sale by operation of another provision of the Bankruptcy Code, 11 U.S.C. § 108(b)."[127] However, the debtor failed to file a petition to redeem within the time period, even when it was extended by §108.[128] As a result, the Third Circuit held that where a debtor seeks to cure default of a lien on a personal residence under § 1322(c)(1), the debtor must either do so before the gavel falls at the foreclosure sale, or file a petition for redemption within the period allowed by state law or the extended period under  11 U.S.C. § 108(b).[129] It did not require debtors seeking to pay secure claims under § 1322(b) to file petitions for redemption within the period allowed by state law or the extended period under 11 U.S.C. § 108(b).

---

[124] *In re Kasco*, 378 B.R. 207, 212-13 (Bankr. N.D. Ill. 2007). *See also In re McKinney*, 341 B.R. 892, 901-02; *In re Martin*, 496 B.R. 323, 327 (Bankr. S.D.N.Y. 2013); *In re Francis*, 489 B.R. 262, 269 (Bankr. N.D. Ga. 2013). *See also Moody v. Amoco Oil Co.,* 734 F. 2nd 1200, 1216 (7th Cir.1984) ("The purpose behind section 108(b) is to permit the debtor an extension of time for doing certain acts necessary to preserve his rights. It would be anomalous to apply it to restrict debtors' rights.").

[125] 497 F.3d 314 (3d Cir. 2007).

[126] *Id.* at 321.

[127] *Id.*

[128] *Id.*

[129] *Id.*

### (3)        Whether the Plan was Filed in Good Faith

Under 11 U.S.C. § 1325(a)(3) and (7), a plan may only be confirmed if it has been

proposed in good faith and if the debtor's filing of the petition was in good faith. Appellants first

contend that Debtor did not file his petition in good faith because it was not filed to reorganize

debt, but instead to "manipulate the Bankruptcy Code to create a more favorable situation for

exercising his state law redemption right."[130] In *In Re Waldron*, which Appellants cite in support

of their position, the Eleventh Circuit held that the debtors filed their bankruptcy petition in bad

faith because the debtors' were not financially distressed, "had no real need for the bankruptcy

process," and instead their "only motive was to enhance their financial coffers" by avoiding an

enforceable option contract.[131] In contrast to the "completely solvent" debtors in *In Re Waldron*,

who owned a home, "an impressive portfolio of stocks," and a parcel of land that was subject to

an option agreement,[132] Debtor is an elderly man whose income in the year preceding his

Chapter 13 petition totaled $5,000,[133] whose home was sold for $12,500 at a tax sale,[134] and who

as a result of the sale, owed a debt to Good Bet that he could not afford to pay without a Chapter

13 Plan that permitted him to pay the debt in installments. It is not bad faith for a debtor who is

financially distressed to file a Chapter 13 petition in order to take advantage of an applicable

provision of the bankruptcy code.[135]

Next, Appellants contend that Debtor's prior failure to pay his real estate taxes and his

redemption of the property through a Plan which directs that real estate taxes should not be paid

---

[130] Appellant Brief at 31.

[131] *In re Waldron*, 785 F.2d 936, 940 (11th Cir. 1986).

[132] 785 F.2d at 937-38.

[133] Appellee App. 22.

[134] Appellants' App. 423.

[135] *In re Lansaw*, 358 B.R. 666, 673 (Bankr. W.D. Pa. 2006).

indicates a continued bad faith effort to avoid paying real estate taxes. However, a debtor's previous poor financial management alone is not bad faith[136] and the record establishes that Debtor is making an effort to pay real estate taxes. Contrary to Appellant's contentions, Debtor's Plan explicitly provides for the payment of future real estate taxes[137] and Debtor paid the 2014 real estate taxes on the property.[138]

As the record establishes that Debtor filed bankruptcy to pay off Good Bet's claim, that his income and expenses are sufficient to make the payments provided for in the Plan, and that he paid the 2014 real estate taxes on the property,[139] Debtor has met his burden to persuade the Court that petition was filed and the plan was proposed in good faith.[140]

## IV.    CONCLUSION

For the reasons provided, the Court will deny Good Bet and the City's appeal. An appropriate Order will be entered.

---

[136] *In re Jensen*, 369 B.R. 210, 234-35 (Bankr. E.D. Pa. 2007) ("If improvident financial decisions were the litmus for good faith, few debtors might pass.").

[137] Appellants' App. at 32-33 ("Debtor and his co-debtor siblings shall be responsible for paying the current water/sewer bills and real estate taxes for the Property or making appropriate payment arrangements with the City of Philadelphia regarding the real estate taxes.").

[138] Appellants' App. at 188-189.

[139] Appellants' App. at 180-189.

[140] *In re Jensen*, 369 B.R. at 234 (stating that the party in interest has the initial burden to articulate a clear and cognizable good faith objection and the ultimate burden then shifts to the debtor to persuade the court to overrule the objection).